## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPHINE AWOSOGBA, | ) | 3:21-CV-00501 (KAD) |
| BRITTANY VICK, | ) | |
|     *Plaintiffs*, | ) | |
| | ) | |
|    v. | ) | |
| | ) | |
| STEVEN MENDELSON, | ) | |
| TRIBL TECHNOLOGY GROUP, LLC, | ) | |
|     *Defendants*. | ) | DECEMBER 1, 2021 |

## ORDER ON PLAINTIFFS' [57] APPLICATION FOR ORDER *PENDENTE LITE* AND PREJUDGMENT REMEDY

Kari A. Dooley, United States District Judge

Plaintiffs, Josephine Awosogba and Brittany Vick, bring this action against Defendants, Steven Mendelson and TRIBL Technology Group, LLC (TRIBL), alleging that Defendants failed to pay Plaintiffs' salary and wages for several months in 2020. Pending before the Court is Plaintiffs' Application for an Order *Pendente Lite* and a Prejudgment Remedy pursuant to Conn. Gen. Stat. § 52–422 and Conn. Gen. Stat. §§ 52–278a *et seq*. Specifically, Plaintiffs seek an order securing $131,239.26 and disclosure of Defendants' assets for attachment, garnishment or other securitization, as a prejudgment remedy in aid of arbitration. Defendants oppose the Application. For the reasons that follow, Plaintiffs' Application is DENIED.

### Facts and Procedural History

The Court has reviewed the parties' memoranda and numerous attachments. These submissions provide additional detail as well as context to the parties' dispute.

Plaintiffs Awosogba and Vick were employed by Defendant TRIBL beginning in May and June of 2020, respectively. In August and September of 2020, Plaintiffs allege that Defendants ceased paying their salary and wages. Specifically, Defendants did not pay Plaintiff Awosogba's

salary on her August 21, 2020 biweekly pay date and thereafter, and Defendants did not pay Plaintiff Vick's wages on her September 4, 2020 biweekly pay date and thereafter.[1] On September 18, 2020, Defendant Mendelson informed Plaintiffs via email that payment of their salary and wages has ceased due to a delay in Defendants' receipt of funding from their bank in Europe. In his email, Defendant Mendelson assured Plaintiffs that their salary and wages would be paid as soon as funding is received. Throughout October and November of 2020, Defendant Mendelson provided Plaintiffs with optimistic projections as to when Defendants would secure the funding. All the while, Plaintiffs continued their employment with Defendant TRIBL. After repeated discussions to no avail pertaining to Defendants' payment of Plaintiffs' salary and wage arrears, Plaintiffs ceased performing work for Defendants on December 15, 2020, the start of their holiday break. On January 6, 2021, Defendant Mendelson notified Plaintiffs via email that the lockdown measures implemented in Europe as a result of the COVID-19 pandemic continued to delay Defendants' receipt of funding. Plaintiffs never resumed their employment with Defendant TRIBL following the holiday break.[2] To date, Defendants have not paid Plaintiffs' salary and wage arrearage.

Plaintiffs brought this civil action against Defendants on April 9, 2021. In their second amended complaint, Plaintiffs allege violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, the Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31–58 *et seq.*, the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95–25.3 *et seq.*, and the common law of Delaware, Connecticut, and North Carolina.

---

[1] In his affidavit, Defendant Mendelson states that the parties agreed to a salary and wage deferral period, during which Defendants paid Plaintiff Vick's net wages for the "week ending September 4, 2020" in the amount of $2,138.49. The Court notes that this payment is not recorded in Plaintiff Vick's employee earnings record, but the Court need not resolve this factual dispute here.

[2] Defendants assert that Plaintiffs failed to give adequate notice of their decision to leave their employment as required under the terms of their written employment contracts.

On August 27, 2021, Plaintiffs filed a motion for a prejudgment remedy against Defendants seeking to secure Defendants' assets pursuant to §§ 52–278a *et seq*. On September 8, 2021, Defendants filed a motion to compel arbitration and stay proceedings pursuant to the Federal Arbitration Act (FAA), 9 U.S.C §§ 1 *et seq*., and paragraph 13 of the parties' employment agreement which contains a binding arbitration clause. The arbitration clause provides that "[i]n the event of any dispute or claim relating to or arising out of [the parties'] employment relationship, [the parties] agree to an arbitration in which . . . [Plaintiffs] are waiving any and all rights to a jury trial but all court remedies will be available in arbitration." On September 14, 2021, the Court granted on consent Defendants' motion to compel arbitration and stay proceedings. Thereafter, on September 23, 2021, Plaintiffs commenced the arbitration of these claims before the American Arbitration Association (AAA). AAA case number 01-21-0016-6504.

Notwithstanding the stay of proceedings,[3] on September 24, 2021, Plaintiffs filed the instant Application for an Order *Pendente Lite* and a Prejudgment Remedy seeking an order that $131,239.26[4] be secured pending the outcome of the arbitration, and "disclosure of the existence and whereabouts of Defendants' assets for attachment, garnishment, or other securitization."[5] In support of their Application, Plaintiffs assert that an order *pendente lite* "may be necessary to protect their rights against potential competing creditors to Defendants."

---

[3] On October 10, 2021, Plaintiffs filed a motion to refrain from applying the stay of proceedings to their Application for an Order *Pendente Lite* and a Prejudgment Remedy, which the Court granted absent objection by Defendants.

[4] Plaintiff Awosogba claims that Defendants owe her $33,230.78 in salary arrears for work she performed between August 2, 2020 through December 19, 2020. Plaintiff Vick claims that Defendants owe her $32,388.85 in wage arrears for work she performed between August 16, 2020 through December 19, 2020. Further, Plaintiffs claim liquidated damages pursuant to Conn. Gen. Stat. § 31–72 and N.C. Gen. Stat. § 95–25.22, for a total calculation of claimed damages against Defendants of at least $131,239.26.

[5] Plaintiffs seek relief only with respect to counts five, six, eight, nine, ten and eleven of their second amended complaint which contain claims under various provisions of the Connecticut and North Carolina wage and hour statutes.

On October 29, 2021, Defendants filed their memorandum in opposition to Plaintiffs' Application. Defendants primarily contend that Plaintiffs failed to establish the requisite showing of necessity for the requested relief under Conn. Gen. Stat. § 52–422. On November 5, 2021, Plaintiffs filed their reply to Defendants' opposition memorandum. In their reply, Plaintiffs indicate that on November 2, 2021, pursuant to AAA Employment Arbitration Rule O–1 they requested the emergency appointment of an arbitrator to consider the same interim relief they seek here.

**Discussion**

Rule 64 of the Federal Rules of Civil Procedure provides: "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. "Rule 64 thus authorizes a federal court to borrow relevant state law on provisional remedies. . . . Limitations and other state law provisions about the circumstances and manner in which provisional remedies can be used, must be honored by the federal court." *Bahrain Telecommunications Co. v. Discoverytel, Inc*., 476 F. Supp. 2d 176, 183 (D. Conn. 2007) (citations omitted; internal quotation marks omitted). Here, Plaintiffs seek an Order *Pendente Lite* and a Prejudgment Remedy pursuant to Conn. Gen. Stat. § 52–422.

Section 52–422 provides in relevant part:

> At any time before an award is rendered pursuant to an arbitration under . . . chapter [909], the superior court for the judicial district in which one of the parties resides . . . , upon application of any party to the arbitration, may make forthwith such order or decree, issue such process and direct such proceedings *as may be necessary* to protect the rights of the parties pending the rendering of the award and to secure the satisfaction thereof when rendered and confirmed.

Conn. Gen. Stat. § 52–422 (emphasis added.).

"An application for an order pendente lite pursuant to § 52–422 is a special statutory proceeding. The statute confers a definite jurisdiction upon a judge and it defines the conditions under which such relief may be given . . . . [Subject matter] jurisdiction is only acquired if the essential conditions prescribed by statute are met." *New England Pipe Corp. v. Ne. Corridor Found.*, 271 Conn. 329, 335, 857 A.2d 348, 352 (2004).

> Under § 52–422, a trial court is empowered to grant injunctive relief during an ongoing arbitration proceeding only when such relief is "necessary" to protect the rights of a party prior to the rendering of an award. Conversely, if such relief is not "necessary" to protect a party's rights during the pendency of the arbitration proceeding, the trial court is not authorized to grant relief under § 52–422.

*Id.* at 336, 857 A.2d at 353.

The parties do not dispute that an arbitration has commenced before the AAA in connection with Plaintiffs' claims against Defendants or that an arbitration award has not yet been rendered. Rather, the parties dispute as a threshold matter whether Plaintiffs' application for prejudgment relief "may be necessary" to protect their rights pending arbitration, as contemplated under § 52–422.

"A threshold determination for the court before considering an application for prejudgment relief ancillary to a pending arbitration is whether the prejudgment relief requested 'may be necessary' to protect the rights of a party to the pending arbitration." *Metal Mgmt., Inc. v. Schiavone*, 514 F. Supp. 2d 227, 235 (D. Conn. 2007). "[T]he burden of proof on this threshold issue lies with Plaintiff." *Yankwitt v. Silver, Golub & Teitell, LLP*, No. FSTCV145014245S, 2014 WL 7462562, at *3 (Conn. Super. Ct. Nov. 19, 2014). In *New England Pipe Corp. v. Northeast Corridor Foundation*, the Connecticut Supreme Court defined necessary under § 52–422 as "something that cannot be done without: that must be done or had: absolutely required: essential, indispensable." 271 Conn. at 336–337, 857 A.2d at 353. "In other words, '[u]nless a party to an arbitration proceeding affirmatively can establish that its rights will be *lost irretrievably* in the

absence of judicial intervention' the court should not intervene. . . ." *Metal Mgmt.*, 514 F. Supp. 2d at 235 (quoting *New England Pipe*, 271 Conn. at 337, 857 A.2d at 353). Defendants argue that Plaintiffs cannot meet their burden of proof that the interim relief they seek is "necessary" as defined by the Connecticut Supreme Court in *New England Pipe*.

Plaintiffs rely principally on *Metal Management, Inc. v. Schiavone*, wherein the plaintiffs sought pursuant to § 52–422 an "attachment or other prejudgment remedy preventing the disposition of the defendant's assets prior to the arbitration's final outcome." 514 F. Supp. 2d at 235. The Court determined that "[s]hould [plaintiffs] be forced to wait for a final arbitral award and possible subsequent enforcement action before asserting their claim, any creditors getting in the collection line before the plaintiffs would have priority over their claims. In that event, the plaintiffs' right to collect could likewise be lost irretrievably." *Id*. at 236. Accordingly, the Court found that "[s]uch a protection of the plaintiffs' rights is necessary as defined by *New England Pipe* in that their ability to collect on a potential award may very well be 'lost irretrievably' and would certainly be jeopardized absent a prejudgment remedy." *Id*. at 235. Likewise here, Plaintiffs assert that Defendant TRIBL's commercial landlord and other unpaid employees "could usurp Plaintiffs' place in the line for Defendants' limited resources."

Defendants distinguish *Metal Management* insofar as here, Plaintiffs will not be "forced to wait for a final arbitral award" or "the arbitration's final outcome" before obtaining the protection they seek. Defendants argue that the interim relief Plaintiffs seek is readily available from the arbitrator under AAA Employment Arbitration Rules 32 and 39(d), and the availability of such relief from the AAA undermines any finding of necessity under § 52–422. In this vein, Defendants rely upon *Savana Investors, LLC v. Vaughn*, wherein the Superior Court observed that "[t]he distinguishing feature of *Metal Management* . . . is that there is nothing at all in the record to

indicate that the arbitrators of the dispute between the parties to that case had any power or authority to enter a prejudgment remedy or any form of *pendente lite* relief." No. X08CV084012896S, 2008 WL 4021333, at *4 (Conn. Super. Ct. July 30, 2008). *See also Yankwitt*, 2014 WL 7462562, at *6–7 (examining the fact that "the decision in *Metal Management* contains no discussion, whatsoever, concerning the possible availability of relief from the arbitrator" and concluding that the language of the decision "tends to confirm that the court did not consider the possibility of interim relief"). The *Savana* Court found that "[i]f interim arbitral relief were shown to be available under a governing set of rules of arbitration procedure, the plaintiffs obviously would not have had to 'wait for a final arbitral award' to secure their claims, and they would have suffered no 'irretrievable loss' of their rights." *Savana Invs.,* 2008 WL 4021333, at *5 (quoting *Metal Mgmt.*, 514 F. Supp. 2d at 236).

The Court agrees with Defendants that Plaintiffs have not established the requisite "necessity" of the injunctive relief they seek as required under § 52–422 and *New England Pipe.* First, as discussed above, relevant to the inquiry of necessity under § 52–422 is "whether the arbitrator can provide an alternative form of relief that is adequate for the purpose sought." *Yankwitt*, 2014 WL 7462562, at *5. *See also, Bahrain Telecommunications*, 476 F. Supp. 2d at 186 (finding compelling the defendants' arguments that the plaintiff cannot satisfy the stringent standard of necessity under § 52–422 because the arbitrator is authorized to issue provisional remedies). In *Yankwitt v. Silver, Golub & Teitell, LLP*, the Court found the question of arbitral relief not just relevant, but essential—"an initial submission to the arbitrator [requesting interim relief], and some form of decision from the arbitrator [regarding that request], appear to be the essential initial steps (absent a persuasive showing of an inherent inability to fashion appropriate

relief)" in deciding the question of necessity under § 52–422. 2014 WL 7462562, at *5.[6] *See also, Savanna Invs.,* 2008 WL 4021333 at *5 (distinguishing *Metal Management* and observing "[t]he clear implication . . . that judicial intervention would not have been found to be necessary if there were a tribunal with powers to enter interim relief orders and prejudgment remedies").

Here, the rules governing the parties' arbitration, the AAA Employment Arbitration Rules, provide Plaintiffs with an alternative form of interim relief. As Defendants correctly note, AAA Employment Arbitration Rule 32 defines "Interim Measures" available at the discretion of the arbitrator prior to a final arbitral award. Rule 32 provides: "At the request of any party, the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court." *See also* AAA Employment Arbitration Rule 39(d) ("The arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court including awards of attorney's fees and costs, in accordance with applicable law."). In their reply, Plaintiffs do not address this aspect of Defendants' argument at all. Moreover, Plaintiffs have applied for emergency relief from the arbitrator pursuant to AAA Employment Arbitration Rule O–1.[7] Where applicable, Rule O–1 provides an accelerated avenue for obtaining measures of protection from the AAA by expediting the appointment of an arbitrator to consider interim requests for relief. And although Plaintiffs speculate that it is not likely that the AAA will

---

[6] The *Yankwitt* Court explained that "[o]nce relief is requested [from the arbitrator], there [are] . . . a number of possibilities, each with different significance for a proceeding under § 52–422." 2014 WL 7462562, at *5. For example, "[i]f the arbitrator provided relief, there might be an issue as to whether it was adequate, or so inadequate as to potentially justify a claim of necessity for further relief. If the arbitrator declined to order any relief, predicated on a perception that he lacked authority to do so, then a claim of necessity might be more persuasive. If the arbitrator were to decline to order any relief predicated on his evaluation of the merits of the application, any request for judicial relief from plaintiff would seem to be seeking review of an interlocutory ruling of an arbitrator—presumptively in direct conflict with *New England Pipe*." *Id*.

[7] AAA Employment Arbitration Rule O–1 defines the applicability of "Optional Rules for Emergency Measures of Protection." Rule O–1 provides: "Where parties by special agreement or in their arbitration clause have adopted these rules for emergency measures of protection, a party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis."

provide the requested emergency relief and thus they must wait for the appointment of an arbitrator through non-expedited means before interim relief is considered, such speculation is not a basis upon which the Court can assess "necessity." Further, even if emergency relief is not forthcoming, as acknowledged by Plaintiffs, interim relief on a non-expedited basis is still available.

In addition, Defendants have submitted an affidavit indicating that the long-delayed funding for Defendant TRIBL's operations is "secured, nascent and available from its investors." This assertion undermines the factual premise of Plaintiffs' claim of necessity that other unpaid creditors and employees (if any)[8] will gain first access to Defendant TRIBL's "limited resources."

**Conclusion**

For the aforementioned reasons, Plaintiffs have not met their burden of showing that their rights will be "lost irretrievably in the absence of judicial intervention." *New England Pipe*, 271 Conn. at 336–337, 857 A.2d at 353. A decision to the contrary would substitute preemptively the Court's judgment for that of the arbitrator. *Yankwitt*, 2014 WL 7462562, at *6. Accordingly, Plaintiffs' Application for an Order *Pendente Lite* and a Prejudgment Remedy is DENIED.

**SO ORDERED** at Bridgeport, Connecticut, this 1st day of December 2021.

　　　　　　　　　　　　　　 */s/ Kari A. Dooley*　　　　　　
　　　　　　　　　　　　　　 KARI A. DOOLEY
　　　　　　　　　　　　　　 UNITED STATES DISTRICT JUDGE

---

[8] The factual basis of the necessity claim appears largely speculative. It appears premised on the assumption that if Plaintiffs were not paid, there must be other employees who were not paid, and therefore others who might queue up ahead of Plaintiffs. It also appears to be based on an assumption that Defendant TRIBL's commercial landlord was not paid. Although Plaintiffs attach text messages and emails from Defendant Mendelson which would tend to support these assumptions by inference, this evidence is dated and offers little insight into Defendant TRIBL's current list of creditors.